**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 10, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP519-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF875

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

ZACHARY CHRISTOPHER GOTH,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Rock County: BARBARA W. McCRORY, Judge. *Reversed and cause remanded with directions*.

Before Blanchard, Nashold, and Taylor, JJ.

¶1 BLANCHARD, J. Zachary Goth appeals the circuit court's denial of his postconviction motion to allow him, after sentencing, to withdraw his guilty plea to a charge of third-degree sexual assault. The parties now agree that Goth

made a prima facie showing that the circuit court erred at the plea hearing in failing to ascertain Goth's awareness of one element of the offense that the State would have to prove beyond a reasonable doubt at trial to secure a conviction. The pertinent element that was not covered at the plea hearing was that, when Goth had unconsented sexual contact with the victim, it was for the purpose of sexually degrading or sexually humiliating the victim, or for the purpose of sexually arousing or gratifying himself. We call this "the purpose element" of the offense.

¶2    The issue in this appeal is whether, despite this omission by the circuit court at the plea hearing, the State, in response to Goth's postconviction motion, provided the court with clear and convincing evidence that Goth was in fact aware of the purpose element at the time of his plea. We conclude that the State failed to prove Goth's awareness. Therefore we reverse the judgment of conviction and the order and remand with directions that the circuit court vacate the judgment of conviction and permit Goth to withdraw his guilty plea.

## BACKGROUND

### *Original Charge*

¶3    The State charged Goth with second-degree child sexual assault in the form of sexual contact with a child under the age of 16, in violation of WIS. STAT. § 948.02(2) (2021-22).[1]  The criminal complaint alleged that Goth entered

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

the bedroom of a nine-year-old girl, in the house where they both then resided, and intentionally touched her vagina.

*Plea Hearing*

¶4    Defense counsel and the prosecutor reached an agreement under which Goth would plead guilty to a different sex crime than WIS. STAT. § 948.02(2). Under the agreement, Goth would enter a plea to an amended charge of third-degree sexual assault, contrary to WIS. STAT. § 940.225(3)(b), through a violation of subdivision (5)(b)2. Unlike § 948.02(2), the charge to which Goth would enter a plea does not require that the victim be younger than 16.[2] For ease of reference, we sometimes refer to this as "the third-degree sexual assault charge." As we now describe in more detail, the circuit court accepted Goth's plea to the third-degree sexual assault charge.

¶5    At the outset of the plea hearing, defense counsel informed the circuit court that under the proposed plea agreement Goth would be entering a plea to third-degree sexual assault and that the prosecutor would move to dismiss a misdemeanor charge in a separate case. The circuit court directly confirmed with Goth that, in this case, Goth had reviewed and signed the Plea Questionnaire and

---

[2] Explaining the amended charge further, a violation of WIS. STAT. § 940.225(3)(b) occurs through unconsented sexual contact with a victim (regardless of the victim's age) when one of two means is used: those described in § 940.225(5)(b)2. or those described in § 940.225(5)(b)3. At issue here is subdivision (5)(b)2., which, as pertinent here, requires the State to prove that the defendant had unconsented sexual contact with the victim through:

> [i]ntentional penile ejaculation of ejaculate or intentional emission of urine or feces by the defendant … upon any part of the body clothed or unclothed of the complainant if that ejaculation or emission is either for the purpose of sexually degrading or sexually humiliating the complainant or for the purpose of sexually arousing or gratifying the defendant.

3

Waiver of Rights form that had been filled out by defense counsel, that Goth understood the contents of the form, and that Goth had no questions about the contents. The court also directly confirmed with Goth that he understood that he would be waiving his right to require the State to prove beyond a reasonable doubt the elements of third-degree sexual assault.

¶6      The circuit court asked Goth if he understood that "the elements that the state would have to prove are that you did have sexual intercourse with [the victim] and you did so without that person's consent." Goth said that he thought he would be entering a plea to a charge involving "sexual contact," not "sexual intercourse." The court countered that an amended information that had been filed by the prosecutor charged a violation of WIS. STAT. § 940.225(3)(a), which criminalizes unconsented sexual intercourse, not unconsented sexual contact. During further discussion, the prosecutor confirmed that he initially filed an amended information that inadvertently reflected a charge different from the one to which the parties had agreed Goth would enter a plea.[3] The prosecutor added, "I'll file a second Amended Information" that would charge third-degree sexual assault through sexual contact and not sexual intercourse, and the court acknowledged that the prosecutor was "going to" file a new amended information.

¶7      The circuit court directly confirmed with Goth that he understood that he would be entering a plea to "third[-]degree sexual contact" and that "in order for the state to convict you of that, [it] would have to prove that you did have

_____

[3] To clarify, the initially filed amended information did *not* charge that Goth had sexual contact with the victim without her consent in the form of intentionally ejaculating or intentionally emitting urine or feces onto her or that, in doing so, his purpose was to sexually degrade or humiliate her or to sexually arouse or gratify himself.

sexual contact with [the victim] and you had that sexual contact without [the victim's] consent." The court further directly confirmed with Goth that he would be waiving his right to have the prosecution prove the elements of that offense beyond a reasonable doubt. The court directed the attention of counsel and Goth to the plea questionnaire.

¶8 We now pause the chronology to briefly summarize pertinent aspects of the plea questionnaire as it appears in the record in order to place the circuit court colloquy with Goth and the attorneys in proper context. The questionnaire as filled out by defense counsel states that Goth would be entering a guilty plea to a violation of "[WIS. STAT.] § 940.225(3)." This omits reference to either of the following sets of topics:

- Whether the plea would be to paragraph (a) or (b) of subsection § 940.225(3) (the sexual intercourse or sexual contact versions of third-degree sexual assault);

- Whether, if the plea would be to paragraph § 940.225(3)(b), it would be to subdivision 1., 2., or 3. of paragraph (5)(b) (defining three different means of sexual contact).

At the place on the questionnaire addressing the "elements that the State would have to prove beyond a reasonable doubt" at trial, counsel had written the following: "1) [symbol for defendant] had sexual contact w/vic [stating her initials] 2) Vic did not consent." This summary of "the elements" omits reference to either of the following sets of topics:

- Goth's alleged ejaculation on the victim or emission on her of urine or feces;

- Goth's alleged purpose to sexually degrade or sexually humiliate the victim or to sexually arouse or gratify himself.

5

¶9    Returning to events at the plea hearing, defense counsel confirmed that he had gone over the questionnaire with Goth and that counsel believed Goth understood it. Counsel responded in the affirmative when the court asked whether counsel had "explained to [Goth] the elements of the offense as if he was charged under [WIS. STAT. §] 940.225(3)(b)," but the court did not ask about discussion regarding the contents of a particular subdivision of § 940.225(5)(b) (the three different means of sexual contact).

¶10    The circuit court confirmed with the prosecutor that he was "going to be filing" a second amended information, this one charging a violation of WIS. STAT. § 940.225(3)(b)—although, again, no one referred to a particular subdivision of paragraph (5)(b). Without expressly identifying the elements, the court confirmed with defense counsel that "those are the elements that [counsel] explained to Mr. Goth" and that counsel believed that Goth understood the elements.

¶11    The circuit court confirmed with both Goth and defense counsel that each agreed with the court that "there is a factual basis" in the criminal complaint on which the court could find Goth "guilty of third[-]degree sexual assault," "with the understanding that it's sexual contact."[4]

---

[4] For context, we note that Goth does not raise in this appeal a lack of a factual basis for the plea, and we do not address that as a potential issue. Explaining further, despite the fact that the circuit court relied on the criminal complaint to determine that there was a factual basis for the plea, no one at the plea hearing raised the point that the criminal complaint contained no reference to ejaculation by Goth or to emission of urine or feces by anyone. This created a mismatch between the purported factual basis and the emission aspect of what the State would have to prove at trial to obtain a conviction on the third-degree sexual assault charge. However, Goth does not argue in this appeal that he is entitled to plea withdrawal because the court failed to determine that there was a factual basis for the plea by making "such inquiry as satisfies [the court] that the defendant in fact committed the crime charged." *See* WIS. STAT. § 971.08(1)(b); *see also* **State v. Thomas**, 2000 WI 13, ¶14, 232 Wis. 2d 714, 605 N.W.2d 836 (factual basis
(continued)

¶12      The transcript reflects discussion by the prosecutor, which is quoted in its entirety in the discussion section below, indicating that he was attempting to use a computer in the courtroom to generate and electronically file the second amended information with the clerk of court, making it available to the circuit court and defense counsel.

¶13      The record on appeal contains the second amended information, which charges a violation of WIS. STAT. § 940.225(3)(b), through the mode specified in (5)(b)2. The record further reflects that this document was filed on the day of the plea hearing. The second amended information explicitly charges that Goth had sexual contact with the victim without her consent by intentionally ejaculating or intentionally emitting urine or feces onto her for the purpose of sexually degrading or humiliating her or sexually arousing or gratifying himself. But the plea hearing transcript does not contain any reference by anyone to the second amended information or to the specific charge that it contains during the balance of the plea hearing.

---

requirement "'protect[s] a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge'" (alteration in *Thomas*)). The only issue that Goth clearly raises in this appeal is a claim under *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and the only disputed aspect of Goth's *Bangert* claim is whether the State met its burden of showing that Goth was aware at the time he entered his plea that the State would have to prove at trial that his purported purpose in committing the third-degree sexual assault was to sexually degrade or sexually humiliate the victim or to sexually arouse or gratify himself.

We do not reach the issue of whether it was error for the circuit court to fail to ascertain that Goth was aware that the State would also have to prove beyond a reasonable doubt that Goth ejaculated on the victim or emitted urine or feces on her. We also do not address in any manner the fact that Goth was allowed to enter a plea to an amended information that ignored the young age of the victim. We emphasize that we do not intend to convey in this opinion any views about the propriety of any aspect of Goth's plea in this case apart from the purpose-element issue in the *Bangert* context.

*Pre-Sentencing Motion for Plea Withdrawal*

¶14    In advance of sentencing, Goth moved to withdraw his plea and the circuit court held a hearing on this motion.  Goth's primary ground for pre-sentencing plea withdrawal was that he had experienced a change of heart since the plea hearing.  The circuit court rejected this as a proper basis for plea withdrawal, and Goth does not now challenge that decision.[5]

*Post-Sentencing Motion for Plea Withdrawal*

¶15    After the circuit court sentenced Goth, and while he was represented by new counsel, he filed the postconviction motion for plea withdrawal that is the subject of this appeal.  Goth argued that his plea was not knowing, intelligent, and voluntary in light of the obligations of circuit courts in taking pleas.  *See* WIS. STAT. § 971.08(1)(a) (A circuit court must directly address the defendant "and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted."); ***State v. Bangert***, 131 Wis. 2d 246, 268-69, 274, 389 N.W.2d 12 (1986) (a defendant pursuing a post-sentencing challenge to a guilty or no contest plea has the initial burden to make a prima facie case that (1) the circuit court accepted the plea without conforming to § 971.08 or other mandatory procedures, and (2) the defendant did not understand the information that should have been provided at the plea hearing; if the defendant makes such a prima facie case, the burden of persuasion shifts to the State to show

---

[5] A defendant does not have an absolute right to withdrawal of a plea before sentencing. ***State v. Jenkins***, 2007 WI 96, ¶32, 303 Wis. 2d 157, 736 N.W.2d 24.  In that situation, the defendant must prove by a preponderance of the evidence that there is a fair and just reason for plea withdrawal. ***Id.***  The reason must be something other than "belated misgivings" about entering a plea. ***Id.***

by clear and convincing evidence that the plea was knowingly, intelligently, and voluntarily made despite shortcomings at the plea hearing).

¶16    Goth's argument was that he must be allowed to withdraw his plea because (1) the circuit court failed to ascertain at the plea hearing that he was aware that, in order to secure a conviction at trial on the third-degree sexual assault charge, the State would have to prove beyond a reasonable doubt that Goth intentionally ejaculated or emitted urine or feces on the victim and that he did so either for the purpose of sexually degrading or sexually humiliating the victim or sexually arousing or gratifying himself; and (2) Goth was not in fact aware at the plea hearing that the State would have to prove these things.

¶17    In making this motion, Goth joined together as a single unit two aspects of the third-degree sexual assault charge:  (1) what we call "the emission aspect" (*i.e.*, the allegation that Goth intentionally ejaculated or emitted urine or feces on the victim); and (2) the purpose element (*i.e.*, the allegation that he did this either for the purpose of sexually degrading or sexually humiliating the victim or sexually arousing or gratifying himself).  Goth did not cite legal authority related to the emission aspect.  But he did cite legal authority related to the purpose element.  The purpose element is the focus of this appeal.

¶18    Goth relied on cases stating that, when the charged form of sexual assault requires proof of "sexual contact," the part of the definition of "sexual contact" that includes the purpose element is "an element of the offense."  *See State v. Jipson*, 2003 WI App 222, ¶¶9-10 & n.4, 267 Wis. 2d 467, 671 N.W.2d 18 (citing *State v. Bollig*, 2000 WI 6, ¶50, 232 Wis. 2d 561, 605 N.W.2d 199 (describing "essential elements" of sexual contact with a child under 13)); *State v. Nichelson*, 220 Wis. 2d 214, 220, 225, 582 N.W.2d 460 (Ct. App. 1998) (referring

to the "essential elements" of sexual contact with a child). In ***Jipson***, we specifically applied this rule to reverse a circuit court's denial of a postconviction motion for plea withdrawal because the State failed to show that the defendant was aware that the State would have to prove as an element of second-degree sexual assault of a child that the defendant had sexual contact with the victim for purposes of sexual degradation, humiliation, arousal, or gratification. ***Jipson***, 267 Wis. 2d 467, ¶¶1, 17.

¶19 At the hearing on Goth's postconviction motion, neither side called a witness or produced new evidence. Instead, both sides and the circuit court referred exclusively to the plea questionnaire, the plea hearing transcript, and the second amended information. The prosecutor operated from the premise that, before Goth entered the plea, he read or was shown the second amended information. Based on that premise, the prosecutor primarily argued that Goth must have been aware at the plea hearing of all of the elements of the third-degree sexual assault charge, because the second amended information stated all of the elements that were required to be addressed at the plea hearing. Goth's counsel argued in pertinent part that the State had not proven that Goth read or was shown the second amended information before he entered his plea.

¶20 The circuit court denied the postconviction motion. The court appeared to conclude that, even if Goth made a prima facie case under ***Bangert***, the State carried its burden of showing that Goth entered a knowing, intelligent, and voluntary plea because: Goth demonstrated his awareness at the plea hearing that he was entering a plea to unlawful sexual contact, and not to unlawful sexual intercourse; and Goth said at the plea hearing that he understood the elements of the offense. Goth appeals.

**DISCUSSION**

¶21     A defendant seeking post-sentencing plea withdrawal must prove, by clear and convincing evidence, that it would be a "'manifest injustice'" to allow the plea to stand. *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (quoted source omitted). A manifest injustice is demonstrated on a showing that the defendant "did not knowingly, intelligently, and voluntarily enter the plea." *Id.* Accordingly, if a guilty plea is not made knowingly, intelligently, and voluntarily, the defendant "is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.'" *Id.*, ¶19 (quoted source omitted).

¶22     "Whether a plea is knowing, intelligent, and voluntary is a question of constitutional fact." *Id.* "We accept the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." *Id.*

¶23     As referenced above, to ensure that a defendant's plea is knowing, intelligent, and voluntary, the circuit court must directly address the defendant "and determine that the plea is made voluntarily with [an] understanding of the nature of the charge and the potential punishment if convicted." WIS. STAT. § 971.08(1)(a).

¶24     We have explained above the nature of Goth's *Bangert* argument. The State does not dispute that the circuit court failed to ascertain at the plea hearing that Goth was aware that, to secure a conviction at trial under WIS. STAT. § 940.225(3)(b) and (5)(b)2., the State would have to prove beyond a reasonable doubt that he did so for the purpose of sexually degrading or sexually humiliating

the victim or sexually arousing or gratifying himself. Further, the State does not dispute that the court was obligated to ascertain his awareness of the purpose element. The State's concession is appropriate. We see no room for an argument that the relevant reasoning and statements in *Jipson*, *Bollig*, and *Nichelson*, did not apply under these circumstances to require the circuit court to ascertain Goth's awareness that the State would have to prove the purpose element at trial.

¶25 We pause to note that this case involves one aspect, namely the purpose element, of the definition of "sexual contact" that is used in three different places in WIS. STAT. § 940.225(5)(b). Pertinent here is the fact that, in each of the distinct means of "sexual contact" that are defined in subdivisions 1., 2., and 3., the State must prove that the defendant had the purpose of sexually degrading or sexually humiliating the victim or sexually arousing or gratifying the defendant. The specific subdivision at issue here is (5)(b)2. *See supra* note 2. The purpose element contained in the three subdivisions of paragraph (5)(b) is stated slightly differently from the definition of "sexual contact" used in WIS. STAT. § 939.22(34) (which applies to offenses not found in § 940.225 or Chapter 948) and the definition that is used in § 948.01(5) (which applies to offenses found in Chapter 948). But, comparing the text of all of these statutes, it could not matter that *Jipson*, *Bollig*, and *Nichelson* all involved Chapter 948 offenses, as opposed to an offense under § 940.225 as here, because the legislature has chosen to use consistent language in defining the purpose element "sexual contact" across these various statutes.[6]

---

[6] Compare the following substantially similar sets of definitions, with emphasis now added on the topic of what the State must prove regarding the defendant's purpose:

(continued)

12

- The "sexual contact" definition in WIS. STAT. § 940.225(5)(b)2.: "Intentional penile ejaculation of ejaculate or intentional emission of urine or feces by the defendant or, upon the defendant's instruction, by another person upon any part of the body clothed or unclothed of the complainant *if that ejaculation or emission is either for the purpose of sexually degrading or sexually humiliating the complainant or for the purpose of sexually arousing or gratifying the defendant.*"

- The four modes of "sexual contact" defined in WIS. STAT. § 939.22(34): "[A]ny of the following *if done for the purpose of sexual humiliation, degradation, arousal, or gratification*:"

  (a) The intentional touching by the defendant or, upon the defendant's instruction, by a third person of the clothed or unclothed intimate parts of another person with any part of the body, clothed or unclothed, or with any object or device.

  (b) The intentional touching by the defendant or, upon the defendant's instruction, by a third person of any part of the body, clothed or unclothed, of another person with the intimate parts of the body, clothed or unclothed.

  (c) The intentional penile ejaculation of ejaculate or the intentional emission of urine or feces by the defendant or, upon the defendant's instruction, by a third person upon any part of the body, clothed or unclothed, of another person.

  (d) Intentionally causing another person to ejaculate or emit urine or feces on any part of the actor's body, whether clothed or unclothed.

- The three categories of "sexual contact" defined in WIS. STAT. § 948.01(5):

  (a) Any of the following types of intentional touching, whether direct or through clothing, *if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant*:

  1. Intentional touching by the defendant or, upon the defendant's instruction, by another person, by the use of any body part or object, of the complainant's intimate parts.

  2. Intentional touching by the complainant, by the use of any body part or object, of the defendant's intimate parts or, if done upon the defendant's instructions, the intimate parts of another person.

  3. Touching by the complainant of the ejaculate, urine, or feces of any person upon the intentional instructions of the defendant, upon the use or threat of force or violence by the defendant, or upon an intentional act of the defendant.

(continued)

¶26    Our supreme court has explained that the rule stated in *Jipson*, *Nichelson*, and *Bollig*, comes into play only when the State must prove sexual contact as part of a criminal charge. *See **State v. Hendricks***, 2018 WI 15, ¶¶5-8, 18, 21, 33, 379 Wis. 2d 549, 906 N.W.2d 666 (plea colloquy in child enticement case sufficient even though circuit court failed to provide a definition of sexual contact; *intent* to have sexual contact is an element of the offense of child enticement, but the *commission* of sexual contact is not an element).  But when, as here, the *commission* of sexual contact is part of the offense, the alleged purpose of the defendant is an "essential element" to be covered at a plea hearing.  *See **id.***, ¶22 ("Because the State must prove sexual contact <u>itself</u> in a child sexual assault case, it makes sense that to understand the nature of the charge, a defendant pleading to sexual assault based on sexual contact must be told the specific

---

(b) Intentional penile ejaculation of ejaculate or intentional emission of urine or feces by the defendant or, upon the defendant's instruction, by another person upon any part of the body clothed or unclothed of the complainant *if that ejaculation or emission is either for the purpose of sexually degrading or sexually humiliating the complainant or for the purpose of sexually arousing or gratifying the defendant*.

(c) *For the purpose of sexually degrading or humiliating the complainant or sexually arousing or gratifying the defendant*, intentionally causing the complainant to ejaculate or emit urine or feces on any part of the defendant's body, whether clothed or unclothed.

statutory definition of sexual contact in WIS. STAT. § 948.01(5)" (emphasis in original)).[7]

¶27    We now turn to the only contested issue here, namely, whether the State proved by clear and convincing evidence that Goth was aware at the time he entered the plea that, to secure a conviction at trial for the charged version of third-

---

[7] In light of the rule stated in **State v. Jipson**, 2003 WI App 222, ¶¶9-10 & n.4, 267 Wis. 2d 467, 671 N.W.2d 18, that circuit courts at plea hearings must ascertain the defendant's awareness of the definition of "sexual contact" that includes the purpose element, we recommend to the Wisconsin Criminal Jury Committee that it consider a review of the current instruction WIS JI—CRIMINAL 1218B (last updated July 2018). This is the substantive instruction for alleged violations of WIS. STAT. § 940.225(3)(b). To the best of our understanding, the current instruction is accurate as far as it goes. But the instruction does not appear to take the **Jipson** rule into account for use in plea hearings, which is one common use of pattern instructions that address the substance of criminal offenses. This may have the potential to contribute to errors at plea hearings. We now explain further.

The current version of WIS JI—CRIMINAL 1218B lists "Elements of the Crime That the State Must Prove" in a section that immediately precedes, but that is separated from, a section labeled, "Meaning of 'Sexual Contact.'" The list of "Elements" states that there are two "[e]lements of the [c]rime" that the State "[m]ust [p]rove": "1. The defendant had sexual contact with (name of victim). 2. (Name of victim) did not consent to the sexual contact." The part of the instruction headed "Meaning of 'Sexual Contact'" states that "[s]exual contact requires" proof of one of the modes of ejaculation or emission described in WIS. STAT. § 940.225(5)(b) and "also requires that the defendant acted with intent to [become sexually aroused or gratified] [sexually degrade or humiliate (name of victim)]."

With that background, a circuit court or party relying on WIS JI—CRIMINAL 1218B might misinterpret it to suggest that, at the time of a plea, the circuit court must ascertain the defendant's awareness regarding the "Elements of the Crime That the State Must Prove" but not the defendant's awareness regarding the "Meaning of 'Sexual Contact.'" The problem is that the last paragraph of the latter section, addressing the purpose element, is an "essential element" under authority that includes **Jipson**.

Here, the circuit court did not indicate on the record that it relied on WIS JI—CRIMINAL 1218B, nor was the instruction attached to the plea questionnaire as filed in the record. But if the court or counsel for either party had consulted this instruction at the time of the plea, it would have appeared to confirm the approach that the parties and the court effectively took at the plea hearing, and that the court again took in resolving the postconviction motion. That is to say, the instruction appears to operate from the following premise: the "Elements of the Crime That the State Must Prove" part of the instruction contains the only elements that must be expressly addressed at a plea hearing; the State's obligation to prove the purpose element does not need to be expressly addressed.

degree sexual assault, the State would have to prove the purpose element beyond a reasonable doubt.

¶28 In a ***Bangert*** challenge, the State may rely on any relevant part of the record on appeal to attempt to demonstrate the defendant's knowledge of the nature of the offense at the time of a plea. *See **Bangert***, 131 Wis. 2d at 274-75; ***Bollig***, 232 Wis. 2d 561, ¶53.

¶29 We conclude that the State, in responding to the postconviction motion, failed to carry its burden of showing to the circuit court by clear and convincing evidence that at the time of the plea Goth was aware of the purpose element. As we proceed to explain below in rejecting various arguments by the State, the record is silent on this issue, and "knowledge, like understanding, cannot be inferred or assumed on a silent record." *See **Bangert***, 131 Wis. 2d at 269.

¶30 We begin by noting that the State applies an incorrect legal standard when it argues that the circuit court properly exercised its discretion in denying the postsentencing motion for plea withdrawal. As we have summarized the legal standards above, Goth must be allowed to withdraw his plea—no discretionary decision of the circuit court is at issue—if he can show that his plea was not made knowingly, intelligently, and voluntarily.

¶31 Turning to the State's arguments on the merits, it contends that passages in the plea hearing transcript which reflect that Goth indicated that he was aware of "the elements" of the charged offense are sufficient proof of his pertinent awareness. But the transcript and record documents that are related to the plea hearing reflect no reason to conclude that Goth was aware of the purpose element in particular. At least as far as the record reveals, at the time of the plea hearing, neither the prosecutor, defense counsel, nor the circuit court were aware

of the rule stated in ***Jipson***. When the court ascertained at the plea hearing that Goth was aware of "the elements," this appeared to mean only that he was aware of the following two "elements" as summarized on the plea questionnaire: that Goth had sexual contact with the victim and that the victim did not consent to that contact.

¶32     The facts here contrast sharply with those in an opinion of our supreme court on which the State relies. The State notes that our supreme court concluded that a plea was knowing, intelligent, and voluntary in part because "the record makes clear that the defendant knew the maximum penalty that could be imposed," even though the circuit court said incorrectly at the plea hearing that there was a six-year maximum term of imprisonment. *See **State v. Taylor***, 2013 WI 34, ¶8, 347 Wis. 2d 30, 829 N.W.2d 482. In ***Taylor***, however, the record was "replete with evidence that Taylor was aware" of the maximum sentence, including statements in the criminal complaint and criminal information and in the plea questionnaire. *Id.*, ¶¶35-38. The facts in ***Taylor*** stand as good examples of the types of facts that could support the State's position in a ***Bangert*** case that is in the same procedural posture as this case, but such facts are missing from the record here.

¶33     Staying with the plea hearing transcript, the State specifically contends that the fact that Goth showed awareness during the plea hearing that he would be entering a plea to a charge of a form of sexual contact, as opposed to sexual intercourse, necessarily means that he understood the purpose element of the form of third-degree sexual assault to which he entered a plea. The State fails to support this argument with logic or legal authority. It is true that the record establishes that Goth understood that he was entering a plea to a form of sexual contact as opposed to a form of sexual intercourse. The basic difference between

17

contact (touching) and intercourse (penetration) is an easily grasped concept and one that Goth apparently understood. But what matters in this appeal is that the State fails to direct us to evidence that Goth understood that to prove sexual contact the State would have to prove the purpose element of sexual contact.

¶34 Turning to a separate argument by the State, it contends that the record establishes that, before he entered the plea, Goth read or was shown the second amended information, which stated the purpose element. To the contrary, the record appears to establish the opposite. As we now recap, during the course of the plea hearing, the prosecutor signaled an intent to electronically sign and file the second amended information, but it strongly appears from the transcript that the prosecutor was the only person in the courtroom who saw the second amended information before Goth entered a plea and the court accepted it.[8]

¶35 The prosecutor first filed an amended information that was erroneously based on an allegation of sexual intercourse. After that mistake was caught during the course of the hearing, the prosecutor said that he would file a second amended information that would charge third-degree sexual assault through sexual contact and not sexual intercourse. During the plea colloquy with defense counsel that followed, the circuit court referred to the idea of counsel explaining the elements to Goth "*as if* he was charged under [WIS. STAT. §] 940.225(3)(b)," using appropriately precise wording to acknowledge the fact that the prosecutor had not yet filed the charge.

---

[8] At the postconviction motion hearing, the circuit court did not make a factual finding either way as to whether Goth read or was shown the second amended information at the plea hearing before entering his plea.

¶36    Shortly after this, the transcript reflects the following discussion:

> THE COURT: … Do we have the [second] Amended Information, [prosecutor's name]?
>
> [PROSECUTOR]: I am just about to sign and send [electronically].[9]
>
> THE COURT: Just wait for a second.
>
> [PROSECUTOR]: I just sent it.
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: Judge, the defense is willing to proceed on the representation from the state that they filed [the second] Amended Information charging that offense.
>
> THE COURT: Okay. All right. So based upon the oral amendment that has been made by the state that is going to be followed up with a second Amended Information, how do you plead to the third[-]degree sexual assault which is considered a sexual … contact?
>
> THE DEFENDANT: Guilty.
>
> THE COURT: And [defense counsel], do you believe he is entering his plea today freely, voluntarily, knowingly, and intelligently?
>
> [DEFENSE COUNSEL]: I do, Your Honor.
>
> THE COURT: And I would agree and find that Mr. Goth understands the proceedings and that his plea is freely, voluntarily, knowingly, and intelligently made. I find that he understands the constitutional rights that are waived by his plea and that he has freely, voluntarily, and knowingly waived those rights.
>
> I find from the record that a factual basis exists for his plea and that the defendant has committed the crime as charged. I will accept his plea to third[-]degree sexual

---

[9] These were references to the prosecutor's electronic signature on a digital document and his plan to transmit the document to the clerk of the circuit court, who in the ordinary course would provide electronic notice of the new filing to the circuit court and all parties.

> assault of a sexual contact nature and find him guilty of that ….

¶37 This discussion reflects that, as the parties and the circuit court waited for the promised second amended information to make its way through the computer system to the court and the defense, defense counsel volunteered that the defense was "willing to proceed," given the prosecutor's assurance that he was or would shortly be filing a second amended information. The prosecutor did not object to proceeding with the proposed plea despite the fact that neither the court nor the defense had received the second amended information. The circuit court also agreed to proceed with the plea, based on what the court called an "oral amendment" of the charge. The court explained that the prosecution would be permitted to "follow[] up with" the filing of a second amended information. The court then directly proceeded to formally accept the plea based on the "oral amendment." At no time during the plea hearing were the contents of the second amended information read aloud by anyone, nor was its substance summarized by anyone.

¶38 In a separate argument, the State directs us to an event in this case that preceded the plea hearing, namely, the preliminary hearing before a court commissioner. The attorney who then represented Goth said, during the course of arguing against bindover, "Sexual contact is defined in the Wisconsin Jury Instructions 2101 as requiring not just the touching of a private or sexual area but also that the touching be done with the intent to become sexually aroused or gratified or to sexually degrade or humiliate."

¶39 The State's reliance on the preliminary hearing transcript is misplaced for multiple reasons, none of which the State addresses on appeal. The preliminary hearing occurred on October 6, 2020, two years before the plea

20

hearing. At that time, Goth was charged with violating WIS. STAT. § 948.02(2), a crime different from the one to which he entered a plea. Further, this occurred while he was represented by an attorney different from the one he would come to have at the plea hearing, and the preliminary hearing was conducted over Zoom, with Goth appearing from jail. Beyond all that, there is no suggestion in the preliminary hearing transcript that anyone at the hearing specifically called Goth's attention to—much less sufficiently explained to him the meaning of—this passing reference by his then-attorney in a legal argument to "Wisconsin Jury Instructions 2101." As Goth cogently puts it, there is "no affirmative evidence demonstrating that Mr. Goth would have known that the same definition of sexual contact applied to both" the charge at issue in the preliminary hearing and the charge at issue in the plea hearing, "that he would have remembered that brief discussion between the attorneys two years prior, or that he even understood that concept to begin with."

¶40 The State makes a separate argument based on an event in this case that occurred after the plea hearing. The State directs our attention to the following statements made at the postconviction motion hearing by the prosecutor, who had also represented the State at the plea hearing, regarding events at the plea hearing:

> [I]f you look at the—the amended Information, which the defendant had, which defense counsel had, and went through because if you recall we—once I had the amended Information we had to recess briefly to get it pulled through and what not. And in that it talks about [Goth having] sexual contact with [the victim], without that person's consent, to intentionally ejaculate[], or intentionally emitted urine or feces onto the clothed or unclothed body of the complainant for the purpose of … sexually degrading or humiliating the complainant, or for the purpose of sexually arousing or gratifying the defendant.

The State now characterizes this as the prosecutor "remind[ing] the court of how" defense counsel at the plea hearing "went over the elements of the last Amended Information with Goth." We agree that this is one reasonable interpretation of what the prosecutor asserted at the postconviction hearing. But the prosecutor's assertion at the postconviction hearing is belied by the transcript of the plea hearing, including the fact that the plea hearing does not reflect a "recess" during which the second amended information was "pulled through" before the court accepted the plea. The State's current argument on this point is meritless because the State fails to acknowledge what is evident from the plea hearing transcript: defense counsel did not go over the second amended information with Goth before he entered his plea.

¶41 The State may intend to suggest that, even if none of the individual events on which it relies allow it to carry its burden of showing Goth's awareness by clear and convincing evidence, some combination of them meets the burden. As should be obvious from our discussion addressing each event, we would reject a cumulative-proof argument. Goth is entitled to withdraw his plea because no event or combination of events provides clear and convincing evidence of his awareness of the purpose element at the time he entered his plea.

## CONCLUSION

¶42 For all these reasons, we reverse the judgment of conviction and the order denying the postconviction motion, and we remand the case with directions to the circuit court to vacate the judgment of conviction and permit Goth to withdraw his guilty plea.

*By the Court*.—Judgment and order reversed and cause remanded with directions.

22

Not recommended for publication in the official reports.